UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYNTHIA M. LIND, | ) | Civil No. 07CV1395 LAB (WMC) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **(1) TO DENY PLAINTIFF'S MOTION** |
| Commissioner of Social Security, | ) | **FOR SUMMARY JUDGMENT; AND** |
| | ) | |
| Defendant. | ) | **(2) TO GRANT DEFENDANT'S CROSS-** |
| | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| | ) | |

**I.**

**INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment. Plaintiff Cynthia M. Lind brings her motion under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g)[1], seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff, Ms. Lind, asks the Court to reverse the Commissioner's decision, and to order initiation of benefits pursuant to the Commissioner adopting the Administrative Law Judge's ("ALJ") decision, which Plaintiff believes is not

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made afer a hearing to which he was a party . . . may obtain judicial review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

supported by substantial evidence or is based on legal error. The Commissioner concurrently seeks summary judgment to affirm the ALJ's decision.

The Court finds the motions appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). After careful review of the moving and opposition papers, the administrative record, the facts, and the law, this Court recommends that the Commissioner's decision denying disability benefits be **UPHELD**, that Plaintiff's motion for summary judgment be **DENIED**, and that Defendant's cross motion to affirm the ALJ decision be **GRANTED**.

## II.

## PROCEDURAL HISTORY

On February 24, 2004, Plaintiff filed an application for Social Security Disability Insurance Benefits alleging disability on October 1, 1999, which she later amended to February 2003. Administrative Record ("AR") at 15-16, 251. Her application was denied initially and also on reconsideration. AR at 15. On August 27, 2004, a request for a hearing was timely filed. *Id*. The ALJ submitted his decision on January 28, 2005, finding that the claimant was only entitled to benefits starting on October 1, 2003, but not prior to this date. AR at 16, 22. The decision of the Social Security Administration became final when the Appeals Council adopted the ALJ's findings in a decision dated June 8, 2007. AR at 3-5.

On July 31, 2007, plaintiff filed the instant complaint pursuant to §405(g) of the Act in order to obtain judicial review of a "final decision" from the Commissioner of the Social Security Administration ("Commissioner") denying her claim for DIB under Title II of the Act. Defendant filed an answer to the complaint on November 8, 2007.

On March 20, 2008, Plaintiff filed a motion for summary judgment (hereinafter "PM") and Defendant filed a cross-motion for summary judgment (hereinafter "DM") on April 18, 2008. Both motions were found suitable for decision without oral argument, and the hearing set for June 23, 2008 was vacated by Magistrate Judge William McCurine, Jr. on May 30, 2008.

///
///
///
///

# III.

# DISCUSSION

**1.     Legal Standard**

A claimant is entitled to disability benefits if, considering her age, education and work experience, she is unable to perform the work she previously performed and also the  "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step **one** determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is not, the decision maker proceeds to step **two**, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" which provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521 (b), 416.921 (b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id*.

1  If the claimant does not have a severe impairment or combination of impairments, the disability
2  claim is denied. If the impairment is severe, the evaluation proceeds to the **third step**, which determines
3  whether the impairment is equivalent to one of a number of listed impairments that the Secretary
4  acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520 (d), 416.920
5  (d); 20 C.F.R. Part 404, Appendix 1 to Subpart P. If the impairment meets or equals one of the listed
6  impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is
7  conclusively presumed to be disabling, the evaluation proceeds to the **fourth step**, which determines
8  whether the impairment prevents the claimant from performing work she has performed in the past. If the
9  claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520 (e), 416.920 (e).
10 If the claimant cannot perform her previous work, the **fifth** and final step of the process determines whether
11 she is able to perform other work in the national economy in view of her age, education, and work
12 experience. The claimant is entitled to disability benefits only if she is not able to perform other work.
13 20 C.F.R. §§ 404.1520 (f), 416.920 (f).

14  Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency
15 decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited. The
16 Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or
17 is based on legal error." *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.
18 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

19  Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe*
20 *v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a
21 reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53
22 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the
23 evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health*
24 *& Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th
25 Cir.1985)). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's
26 decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive,
27 "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."
28 *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id*.

**2.     The ALJ's Decision**

After weighing the evidence from the administrative record and listening to the testimony of Plaintiff and the experts, the ALJ concluded that Plaintiff was not disabled during the period from February 1, 2003 to October 1, 2003[2]. However, the ALJ found Plaintiff met the requirements for disability after October 1, 2003.[3] AR at 16. Specifically, the ALJ found that Plaintiff did not meet or equal any of the listed impairments during the relevant time period. *Id*. From February 1, 2003 to October 1, 2003, the ALJ also found Plaintiff's impairments did not prevent her from performing past relevant work (Step 4 Analysis), leading to his conclusion that she was not disabled. *Id*. In determining the Plaintiff's residual functioning capacity ("RFC"), the ALJ reasoned that Plaintiff's limitations and symptoms are in excess of the objective medical findings and found them **not** to be credible under a "clear and convincing" standard. AR at 18-19 (ALJ cites nine reasons supporting his position).

During the hearing, the ALJ listened to Dr. Doren, medical expert, testify regarding evidence of severe impairments to the Plaintiff's back, spine, and wrist. AR at 17-18. However, considering the relevant time period, Dr. Doren made a composite RFC assessment that Plaintiff's impairment would not preclude her from lifting 20lbs occasionally and 10lbs. pounds frequently. *Id*. The majority of Dr. Doren's assessment comes from reports and objective findings that were made in 2004. AR at 17. Similarly, Mark Remas, vocational expert, opined that given Plaintiff's RFC, she could perform past relevant work during the relevant time period, which included semi-skilled and light level work. AR at 19.

Based on the ALJ's own credibility determination of the Plaintiff, substantive evidence evaluation,

---

[2] In reference to this time frame, the phrase, "the relevant time period," will be used interchangeably.

[3] Plaintiff has already been awarded benefits based on this finding and we will not consider the severity of Plaintiff's ailments **after** October 1, 2003.

testimony from Dr. Doren (medical expert), and Mark Remas (vocational expert), the ALJ concluded that prior to October 1, 2003, the Plaintiff is not entitled to DIB under sections 216(I) and 223 of the Social Security Act. AR at 22.

**3. Background/ Analysis of the Issues in Dispute**

The main issues in contention deal with step 2 and step 4 of the sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. Step 2 evaluates the "severity" of Plaintiff's impairments. This evaluation is crucial in determining whether the combination of impairments would rise to the level of a disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). Step 4 determines whether the impairment prevents the claimant from performing past relevant work and this evaluation occurs when the impairment is not conclusively presumed to be disabling. 20 C.F.R. §§ 404.1520 (e), 416.920 (e). If the claimant is able to perform her past relevant work, she is not disabled. *Id.*

Plaintiff, in her motion for summary judgment, seeks reversal or remand on the grounds that the ALJ's decision of Plaintiff's disabling pain was not based on substantial evidence and did not comport with the law. PM at 3. The ALJ must engage in a two step analysis to determine the credibility of Plaintiff's pain testimony regarding her subjective symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ looks to the objective medical evidence produced by the Plaintiff and the underlying impairment to determine whether symptoms could reasonably be produced by that impairment. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Second, if Plaintiff meets the first test, the ALJ must offer specific, clear, and convincing reasons to reject the Plaintiff's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In addition, the ALJ must identify "what evidence suggests the complaints are not credible"[4] and "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Social Security Ruling, No. 96-7p, 1996 WL 374186, at *2 (SSA July 2, 1996). When the Plaintiff's statements are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on consideration of the entire case record," including but not limited to "the

---

[4] *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, as well as any other "relevant evidence in the case file." *Id.* If additional information is needed to make a credibility assessment, the adjudicator "must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." *Id.* at *3. Additional issues the adjudicator "must consider" are the kinds of evidence identified in 20 C.F.R. 404.1529©) and 426.929©), including factors like: Plaintiff's daily activities, medications for pain, and "[a]ny other factors concerning the individual's functional limitations and restriction due to pain or other symptoms." *Id.* Consistency is "[o]ne strong indication of the credibility of an individual's statements . . . ." Social Security Ruling, No. 96-7p, 1996 WL at *5.

On January 10, 2005, Plaintiff testified at the review hearing that she was born on July 31, 1950, and that she is a high school graduate. AR at 229. Regarding past relevant work, Plaintiff testified to holding the following positions since 1990: customer service representative and sales specialist (phone and computer work), extra for t.v. production business, helper at a children's gym, phone solicitor (selling candles), and proofreader/ typist (customer service). AR at 66, 229-231, 236. After Plaintiff left her position as customer service representative and sales specialist, Plaintiff was unable to maintain a job for more than five months. AR at 66. Plaintiff stated that she was fired from her last job as a proofreader/ typist position because she was too slow and had only been working three hours a day, two days a week. AR at 231-232.

Plaintiff alleges disability from bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, osteoporosis of the spine, and chronic right ankle pain. AR at 115, 231, 233-235; PM at 3.[5] Additionally, she asserted her inability to lift more than 5lbs. with both hands and that she was limited to sitting and standing for no longer than 5-10 minutes. AR at 232. Due to her ailments, Plaintiff mentioned that she took pain medication daily (up to three times a day). AR at 235. Regarding her daily activities, Plaintiff stated: that she is limited in driving mainly to the library and grocery store but has difficulty pushing a shopping cart because of pain in her hands, she has decreased her walking routine because of back pain, she is unable to clean the house, she is limited to flower gardening, and that she does not have the

---

[5] Plaintiff's brief focuses mainly on bilateral carpal tunnel syndrome and chronic right ankle pain. Our analysis will be limited to those main ailments cited by the Plaintiff.

ability to continue her hobby of swimming. AR at 233-235. The limitations specified by the Plaintiff according to her pain testimony, manifested approximately one year from the date of the hearing (early 2004).[6] *Id.* Finally, at the time of the hearing, Plaintiff was scheduled for hand surgery due to her carpal tunnel syndrome. AR at 237.

The ALJ rejected Plaintiff's pain testimony as it related to the period of February 1, 2003 to October 1, 2003, for the following reasons:

> First, during the relevant period, the claimant's allegations of limitations are not borne out in her description of her daily activities. For the relevant period, the claimant has not alleged an inability to care for her personal needs. She testified at the hearing that she was able to do her house work and other chores, drive, shop, and garden until more recently when she hired a housekeeper to assist her in her chores. Second, during the relevant period, there is no evidence the claimant has loss of muscle or atrophy. Third, during the relevant period, there is no evidence of sleep deprivation secondary to pain. In fact, the claimant is described as alert, oriented and in no acute distress. Fourth, during the relevant period, there is no evidence of a severe weight loss due to lack of appetite due to pain. In fact, the claimant is noted to be well appearing and denies any weight changes. Fifth,, during the relevant period, there is no evidence the claimant's medications imposed disabling side effects. Sixth, during the period February 1, 2003 to October 1, 2003, the evidence establishes the claimant is capable of light level work, on a sustained basis. Seventh, during the relevant period, no physician has opined the claimant's impairments could not be treated with conservative treatment modalities. Eighth, no physician has opined that during the relevant period, the claimant is permanently or totally disabled. Ninth, the claimant has allegedly incapacitating symptoms and limitations. However, during the relevant period, the objective evidence of record does not reflect the existence of an impairment or combination of impairments which would have produced the crippling symptoms and limitations alleged by the claimant.

AR at 19 (citations omitted).

Overall, Plaintiff disagrees with the ALJ's characterization regarding the disabling pain testimony and ability to perform past relevant work, specifically, reasons 6, 8, and 9.[7] Plaintiff argues that: A) the ALJ erred in finding that Plaintiff could perform the full range of light work activity prior to October 1, 2003; B) the ALJ's finding that Plaintiff could perform her past relevant work prior to October 1, 2003, is not based upon substantial evidence; C) the ALJ erred in determining Plaintiff did not suffer from severe bilateral carpal tunnel syndrome and chronic right ankle impairment prior to October 1, 2003; D) and the

///

---

[6] This scenario takes into consideration the amount of time most favorable to the plaintiff. Plaintiff mentions that she last swam approximately one month before the hearing and hired someone to clean the house about a year before the hearing. AR at 233-35.

[7] Analysis will mainly focus on the ALJ's reasons in issue 6, 8, and 9 with some supporting arguments regarding issue 1.

ALJ erred in relying on the testimony of the vocational expert in response to an incomplete hypothetical. *See* PM.

### A.  Whether Plaintiff Could Perform the Full Range of Light Work Activity Prior to October 1, 2003.

In assessing Plaintiff's retention of her RFC and ability to perform light work prior to October 1, 2003, the ALJ relied on the testimony of Dr. Doren, medical expert. *Shafer v. Barnhart*, 2005 WL 81637, at **7 (9th Cir. 2005) ("it is acceptable for the ALJ to rely on a non-treating, non-examining medical expert's residual functional capacity assessment as long as that opinion is not contradicted by all other evidence in the record . . . ") (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir.1989). The ALJ concluded that Plaintiff could perform the full range of light work activity, which the ALJ believed was further substantiated by the vocational expert[8]. AR at 21, 248-49. The expert findings were based on the objective evidence rendered by both the treating and examining physician's reports, which the ALJ believed did not comport with Plaintiff's subjective symptoms. AR at 21. This Court recognizes that Plaintiff has presented objective evidence, meeting the first part of the subjective pain analysis, however, the objective evidence combined with the lack of credibility determination[9] made by the ALJ, undermine the second part of the analysis, which the ALJ has shown by clear and convincing reasons. AR at 18-19, 21. *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-82, 1284 (9th Cir. 1996)).

Plaintiff, disagreeing with the ALJ's assessment, cites a medical report from June 29, 2001, which shows her pain was rated a 7 out of a 10 point scale and that these symptoms were confirmed by Dr. Cheryl Patterson when she assessed that Plaintiff had "chronic right wrist and hand pain." PM at 4. Similarly, Plaintiff cites progress notes from August 3, 2001 as confirmation of the severity of Plaintiff's bilateral carpal tunnel symptoms. PM at 5. Furthermore, Plaintiff concludes that there is a "material conflict" because the ALJ's conclusion differs from the medical expert's opinion and remains unresolved. PM at 8. Plaintiff suggests that Dr. Doren found lifting of 5 lbs. frequently a reasonable limitation, while the ALJ

---

[8] Covered in Part B of the analysis.

[9] This is not to say that the Plaintiff's statements were found to be inconsistent, in actuality, the Plaintiff's statements have consistently shown that the severity of her pain symptoms originated after the relevant time period. Hence, the testimony provided by Plaintiff and the time period do not match up.

concluded from Dr. Doren's testimony that Plaintiff was capable of lifting up to 10 lbs. frequently **prior to** October 2003. PM at 6-7. Essentially, Plaintiff believes the ALJ has not supported his conclusion with substantial evidence regarding Plaintiff's ability to perform light work prior to October 2003. PM at 7.

Defendant contends the ALJ properly relied on the medical expert, Dr. Doren. DM at 5. Here, Defendant argues Dr. Doren testified that Plaintiff's condition was benign before September 2003 and that any diagnosis of bilateral carpal tunnel made by a treating physician occurred **after** September 2003. DM 5. Moreover, Defendant asserts that Dr. Doren's testimony, read in context, reveals his belief that the medical records were unremarkable **prior to** September 2003 and that any RFC determination by Dr. Doren limiting Plaintiff to carrying 5 lbs. was only made in reference to Plaintiff's abilities **after** September 14, 2004.[10] DM at 6. Finally, Defendant points to Plaintiff's own admissions of intermittent bilateral hand tingling and numbness that started in September 2003, and the lack of support in the record to substantiate the severity of Plaintiff's ailments during the relevant time period. DM at 5, 7.

The Court's review of the record finds no additional objective medical evidence to support Plaintiff's allegations. *See* AR. The test for being able to perform light work, stated in 20 C.F.R. 404.1567 (b), involves lifting no more than 20 lbs. occasionally and up to 10 lbs frequently. No testimony by either expert revealed that Plaintiff was unable to frequently lift up to 10 lbs. **prior to** October 2003. Further, the Court agrees with Defendant's conclusion that Dr. Doren's testimony regarding Plaintiff's functional limitation of carrying 5 lbs. refers to Dr. Pacelli's RFC assessment in September 2004.[11] DM at 6. Dr. Doren was directly addressing the ALJ's question regarding the weight that should be given to Dr. Pacelli's RFC evaluation, which stated that Plaintiff could lift 10 lbs. occasionally and frequently. AR at 241-243. This conclusion is further substantiated by Dr. Doren's statement that a 5 lb. limitation was appropriate prior to surgical intervention, which was mentioned by Dr. Pacelli on April 30, 2004. AR at 222, 243. Although Plaintiff testified at the hearing that she could lift no more than 5 lbs., there is no objective medical evidence that supports her limitation **prior to** October 2003. AR at 232.

The opinion of a non-examining, testifying medical advisor may constitute substantial evidence

---

[10] Defendant states Dr. Pacelli's RFC assessment occurred on June 29, 2004 and cites AR at 197-200. However, the reports are dated September 14, 2004. This inaccuracy however does not undercut the Defendant's arguments.

[11] Well outside the relevant time period of February 2003 to October 2003.

when consistent with, and supported by, other substantial evidence from the record. *Morgan v. Commissioner*, 169 F.3d 599, 600 (9th Cir. 1999); *see* 20 C.F.R. § 404.1527(f)(2)(iii) (ALJ may rely on medical expert opinion regarding the severity of a claimant's impairment). Hence, the Court finds that the ALJ could reasonably conclude that the medical expert's testimony regarding Plaintiff's RFC limitation of 5 lbs. concerned only the time frame **after** October 2003. Therefore, there is no material conflict between the opinions of the ALJ and the medical expert. *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965) (ALJ's conclusions, reasonably drawn from the evidence, shall be conclusive if supported by substantial evidence).

Additionally, Plaintiff's reliance on her medical assessment on June 2001, followed by progress notes on August 2001, do not provide enough objective medical evidence to support Plaintiff's subjective pain complaints during the relevant time period. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (ALJ is entitled to rely on what the record does not say). First, these reports occurred 18 months before Plaintiff testified to the date of onset regarding the debilitating effects of bilateral carpal tunnel syndrome. AR at 251. Second, there were no objective tests conducted during the relevant time which substantiated the Plaintiff's claim. On the contrary, there were reports during the relevant time period that showed Plaintiff's upper and lower extremities and joint pain as unremarkable. AR at 168, 172-73. Third, Plaintiff herself claimed that her numbness and tingling, with occasional shooting pain, started six months prior to her March 2004 evaluation, when those symptoms were first objectively verified through tests. AR at 156, 160-61, 239-241, 244-45. This fact is further substantiated by Dr. Doren's statement that people who do not have neurological findings of numbness can engage in light work under the Social Security rubric.[12] *See* AR at 242-243.

Nonetheless, in assessing Plaintiff's credibility, an ALJ can use "ordinary techniques of credibility evaluation" in determining whether to accept or reject Plaintiff's allegations of disabling pain. *Fair v. Bowen*, 885 F.2d at 603 n.5. Clearly, Plaintiff's own testimony reveals that her limitations manifested **after** the relevant time period. AR at 156, 251. Similarly, the "evidence [provided by Plaintiff] did not pertain to . . . the relevant period and was inconsistent with other substantial evidence that did pertain to the

---

[12] There is no objective evidence or any indication based on Plaintiff's own complaints and testimony that she suffered from severe bilateral carpal tunnel symptoms, tingling and numbness, prior to October 2003.

relevant period," hence, "the ALJ was under no obligation to give [medical reports cited outside the relevant time period] controlling weight." *Freeman v. Apfel*, 208 F.3d 687, 691 (8th Cir. 2000) (citing *Cf. Prosch v. Apfel*, 201 F.3d 1010 (8th Cir.2000) (applying 20 C.F.R. § 404.1527(d)(2)); *see also Freese v. Barnhart*, 2004 WL 1920702, at *6 (D. Me. 2004) ("diagnosis from a physician, particularly one who was not the claimant's treating physician **during the relevant time period**, may carry less weight if the diagnosis is inconsistent with other substantial evidence in the record.") (citing, inter alia, 20 C.F.R. § 404.1527(d)(4)), *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981); *Klett v. Barnhart*, 303 F.Supp.2d 477, 484 (S.D. N.Y. 2004); *Peguero v. Massanari*, 2001 WL 1029048 (S.D. N.Y. 2001).

As stated previously, there was no finding of numbness and tingling[13] in any medical report prior to October 2003, no finding that Plaintiff's RFC limited her ability to lifting no more than 5 lbs. prior to October 2003, and no complaint by Plaintiff in any medical report that would reveal the disabling nature of her ailments during the relevant time period. Therefore, the reports detailing Plaintiff's impairments prior to the relevant time period are afforded little weight because they are unsubstantiated by reports during the relevant time period. *Weidel v. Commissioner of Social Sec.*, 2008 WL 598003, at *7 (E.D. Mich. 2008) (citing *Miller v. Secretary*, 843 F.2d 221, 224 (6th Cir.1988).) ("[s]ince [the doctor] offered little objective evidence during the relevant period to support his conclusion of disability, his opinion need not have been given any special weight."). Contrary to Plaintiff's statement that the ALJ failed to conduct a function-by-function assessment to determine Plaintiff's RFC, the ALJ assessed the treating and examining physicians' opinions, took into consideration the expert's opinions, and weighed the Plaintiff's credibility. *See* AR at 18, 21, 238-251. Accordingly, the Court finds the ALJ provided specific, clear, and convincing reasons for concluding that Plaintiff was capable of performing light work prior to October 2003. *Craig v. Astrue*, 2008 WL 682255, at *1 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996) ("the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.").

//
//

---

[13] Dr. Doren states that this is an Indicator of the severity of the bilateral carpal tunnel syndrome. AR at 242-243.

**B.     Whether Plaintiff Could Perform Past Relevant work Prior to October 1, 2003 is Based on Substantial Evidence**.

The ALJ concluded that there was substantial evidence that Plaintiff could perform her past relevant work prior to October 2003. Past relevant work is defined as work that Plaintiff has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [Plaintiff] to learn to do it." 20 C.F.R. § 404.1560(b)(1). At Step four of the five step sequential evaluation, the ALJ can rely on the testimony of the Plaintiff, the Dictionary of Occupational Titles ("DOT"), or the vocational expert to determine whether the Plaintiff could perform past relevant work. 20 C.F.R. § 404.1560(b)(2); *Nolan v. Commissioner of Social Sec. Admin.*, 2005 WL 3086568, at \*\*1 (9th Cir. 2005) ("the ALJ reasonably relied on the vocational expert's opinion"); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993) (ALJ could solely rely on the Plaintiff's testimony about past relevant work). Here, the ALJ relied on his own assessment substantiated by the vocational expert's testimony[14] to conclude that Plaintiff had performed substantial gainful employment in the past fifteen years. AR 19, 21, 248-250. The ALJ's finding must be supported by substantial evidence. *Hall v. Secretary of Health, Ed. and Welfare*, 602 F.2d 1372, 1374 (9th Cir.1979). Substantial evidence is evidence that a reasonable mind finds acceptable to support a conclusion. *Id.* at 1375. Furthermore, Plaintiff bears the burden to prove that she was disabled and incapable of performing her past relevant work, during the relevant time period. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999); 20 C.F.R. § 404.1520. This Court concludes that the ALJ's decision is supported by substantial evidence.

Plaintiff argues that the: 1) ALJ incorrectly cited the testimony of the vocational expert because the job of "parts order clerk" was not one of the Plaintiff's past relevant positions; 2) ALJ incorrectly evaluated

---

[14] Specifically, the ALJ presented the vocational expert with a hypothetical, which took into consideration Plaintiff's impairments, and asked the vocational expert to assess her ability to perform past relevant work. AR at 248-49. The question posed by the ALJ read:

Q: [A]ssume a hypothetical person with the age, education, and work experience as Ms. Lind. For purposes of this first hypothetical, assume the hypothetical person can lift 20 lbs. occasionally, 9 lbs. frequently. And is precluded from forceful gross handling. But can perform frequent gross handling non-forceful, and fine fingering. Can the hypothetical person perform the past work of claimant?

A: Yes. Within the hypothetical, the past relevant work would be appropriate.

AR at 249.

the medical expert's testimony of Plaintiff's RFC limitation; 3) ALJ erred in finding that Plaintiff's work as a phone solicitor qualified as substantial gainful activity and was past relevant work; 4) ALJ failed to address conflicts between the vocational expert's testimony and the DOT; and 5) ALJ erred by relying on testimony of the vocational expert in response to an incomplete hypothetical. PM at 9-14, 20-21. With respect to the second argument, this Court has already found in Part A that the medical expert's evaluation that Plaintiff was limited to lifting 5 lbs. was related to the time period **after** October 2003. Therefore, there is no error in the ALJ's assessment regarding Plaintiff's second argument.

Defendant argues that the ALJ's misidentification of "parts order clerk" instead of "sales representative job" constitutes harmless error because the ALJ reasonably found that Plaintiff could perform other past relevant jobs, thereby, resulting in harmless error. DM at 9 (citing *See Burch*, 400 F.3d at 679) ("A decision of the ALJ will not be reversed for errors that are harmless."). Moreover, Defendant argues that the vocational expert's testimony was consistent with the DOT and that the ALJ's failure to question the vocational expert about any possible conflicts with the DOT was harmless error. DM at 10 (citing *See Renfrow v. Astrue*, 2007 WL 2296409, at *3 (8th Cir. 2007). Finally, Defendant notes that an ALJ may properly limit a hypothetical to those restrictions supported by substantial evidence. DM at 9 (citing *Magallanes*, 881 F.2d at 56-757 (emphasis added); *see also Light v. SSA*, 199 F.3d 789, 793 (9th Cir. 1997).

This Court concludes that the ALJ **erred** in his finding that Plaintiff had past relevant work experience as a telephone solicitor and parts order clerk. However, this error is **harmless** because Plaintiff was found to have performed past relevant work as a customer service representative.[15] AR at 16, 19, 21, 248-49. When looking at the test for establishing past relevant work, substantial gainful activity under 20 C.F.R. § 404.1574(b)(2), ©(1), ©(3) is **not** met when Plaintiff's earnings are reduced below the substantial gainful activity earning level (less than $700/ month not adjusted for inflation) or when Plaintiff worked three months or less because of her impairment. Such a situation will constitute an unsuccessful work attempt and cannot be considered past relevant work. *Id*. Recognizing that Plaintiff held a position as a telephone solicitor for less than three months (approximately 2 ½ weeks) and earned an income totaling $564.00, the ALJ erred in finding that Plaintiff's position as a telephone solicitor qualifies as substantial

---

[15] Since the evaluation of Plaintiff's past relevant work was not only limited to telephone solicitor and parts order clerk, any error by the ALJ is harmless because even if one of the jobs meets the requirements for past relevant work, it is enough to support a finding that Plaintiff was not disabled.

gainful activity, and hence, past relevant work. AR at 16, 21. Moreover, the ALJ's position is further undermined by Mr. Navarrete (SSA interviewer) who reported Plaintiff had not performed substantial gainful activity since 1999. AR at 81.

Nevertheless, this Court is confronted with the vocational expert's testimony that Plaintiff's past relevant work as a customer service representative constituted both light work and was within the RFC of the Plaintiff. AR at 248-259. Since the ALJ had convincing reasons for finding Plaintiff capable of performing light work prior to October 2003 (*supra* Part A), the hypothetical given to the vocational expert, which was based on her ability to lift 20 lbs. occasionally and 9 lbs. frequently with the ability to "perform frequent gross handling non-forceful, and fine fingering," was sufficient to make an assessment about whether Plaintiff could perform her past relevant work. *Id*. Plaintiff contends that the hypothetical given to the vocational expert conflicted with the testimony of the medical expert. However, the conflicting testimony cited by Plaintiff[16] was only referencing her RFC for the period **after** October 2003. *See supra* Part A. Therefore, no conflict exists and the hypothetical submitted to the vocational expert was within the ALJ's discretion.[17]

Looking at the record, the ALJ clearly laid out each of the Plaintiff's limitations when positing the hypothetical to the vocational expert. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984) (in constructing a hypothetical the ALJ must lay out all Plaintiff's impairments supported by the record). The ALJ relied on the medical expert who stated that Plaintiff's RFC would be limited to "no constant grasping, fingering, feeling . . . [b]ut frequent in terms of simple grasp, simple fingering and feeling" with gripping

---

[16] That Dr. Doren limited Plaintiff's RFC to lifting 5 lbs.

[17] Plaintiff, citing Social Security Ruling No. 00-4P, 2000 WL 1898704 (SSA December 04, 2000), maintains that the ALJ has an "affirmative responsibility" to ask the vocational expert about any possible conflict. However, the Court in *Massachi* was even more direct, holding for the first time that an ALJ **may not** "rely on the vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles*." *Massachi v. Astrue*, 486 F.3d 1149, 1152-1154 (9th Cir. 2007). Here, the ALJ did not, as a threshold question, ask the vocational expert about any potential deviations or conflicts with the DOT. Under *Massachi*, this would lead to a remand so the ALJ could make the appropriate inquiries. *Id*. at 1153-54. However, there are two reasons why this court finds remand unnecessary in this instance. First, the hearing where the ALJ questioned the vocational expert occurred on January 10, 2005. Hence, the ALJ could not be held to have erred based on the *Massachi* 2007 decision. Second, even if remand were granted on this issue, it would serve no purpose because the procedural error was harmless and the vocational expert "provided sufficient support for [his] conclusion" because he based his assessment on Plaintiff's limitations, as given by the ALJ, and Plaintiff's past relevant work as a customer service representative. *Id.* at 1154 n.19.

and fine fingering limited to one-third to two-thirds of a day as required by light work. AR at 243. Although the ALJ erred in his determination that Plaintiff's telephone solicitation work constituted substantial gainful activity, that error is harmless because both the ALJ and the vocational expert found Plaintiff's customer service representative job as substantial gainful activity that was within the range of Plaintiff's RFC. AR at 19, 21, 548-550. Hypothetically, if the ALJ had only questioned the vocational expert about the telephone solicitation job or parts order clerk, there would be an unresolved conflict that the ALJ would be obligated to resolve before he could rely on the vocational expert. Social Security Ruling No. 00-4P, 2000 WL 1898704, at *2 (SSA December 04, 2000). However, in this case, any conflict is mitigated by the vocational expert's consideration of Plaintiff's light work as a customer service/ sales representative, which the ALJ relied upon to conclude that Plaintiff was capable of performing her past relevant work. AR 19, 248-249. Considering the specific circumstances, failure by the ALJ to ask the vocational expert about any possible conflicts was harmless error, since the eventual outcome would remain unchanged even if the vocational expert was asked to reconcile the conflict between his testimony and the DOT. *See Renfrow v. Astrue*, 2007 WL 2296409, at *3 (8th Cir. 2007) (citing *Massachi v. Astrue*, 486 F.3d, 1149, 1152 n.9 (9th Cir. 2007).

Similarly, an inaccurate reference by the ALJ regarding Plaintiff's past relevant work as a "parts order clerk" constitutes harmless error. AR at 19. The Plaintiff is obviously correct in showing that the ALJ did not show substantial evidence that Plaintiff could return to her previous position as a "parts order clerk" because she never held that position. PM at 10. Nonetheless, since the ALJ found Plaintiff's previous history as a customer service representative to be evidence of a substantial gainful activity that Plaintiff could perform **prior to** October 2003, the ALJ properly relied on the vocational expert's answer to his hypothetical:

> Q: [A]ssume a hypothetical person with the age, education, and work experience as Ms. Lind. For purposes of this first hypothetical, assume the hypothetical person can lift 20 lbs. occasionally, 9 lbs. frequently. And is precluded from forceful gross handling. But can perform frequent gross handling non-forceful, and fine fingering. Can the hypothetical person perform the past work of claimant?
>
> A: Yes. Within the hypothetical, the past relevant work would be appropriate.

AR at 248-249. This hypothetical did reference Plaintiff's position as a customer service representative, for which Plaintiff was gainfully employed full time for 15 years. AR at 66, 229-30, 248. Therefore, this

Court finds that any error that occurred in mischaracterizing Plaintiff's past relevant work was harmless because the evidence supports the ALJ's conclusion that Plaintiff had the requisite RFC to perform past relevant work. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.2005) ( "A decision of the ALJ will not be reversed for errors that are harmless.")

**C. The ALJ Reasonably Found Plaintiff's Bilateral Carpal Tunnel Syndrome or Chronic Ankle Pain were <u>Not</u> Severe Impairments Prior to October 1, 2003.**

The ALJ found Plaintiff **did not** suffer from severe bilateral carpal syndrome or chronic ankle pain during the period from February 2003 to October 2003. AR at 17-19. The ALJ's findings are conclusive if supported by substantial evidence. *Hall*, 602 F.2d at 1374 (citing 42 U.S.C. s 405(g); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978); *Walker v. Mathews*, 546 F.2d 814, 818 (9th Cir. 1976)). As stated previously, substantial evidence means a finding that is supported by "more than a mere scintilla . . . [and] as a reasonable mind might accept as adequate to support a conclusion." *Cox v. Califano,* 587 F.2d 988, 989-90 (9th Cir.1978).

In applying the substantial evidence test, we are obligated to look at the record as a whole and not merely at the evidence tending to support a finding. *Id*. at 990. Furthermore, an assessment with respect to "severity" (Step 2 analysis) depends on whether Plaintiff's impairments significantly limit her physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521(a); *Bowen v. Yuckert*, 482 U.S. 137 (1987). This court finds Plaintiff did not carry her burden of providing evidence that would support a finding of severe impairment for either Plaintiff's bilateral carpal tunnel syndrome or ankle pain prior to October 2003.

Plaintiff argues her bilateral carpal tunnel syndrome and ankle pain were severe impairments prior to October 2003. PM at 15, 18. Plaintiff cites Dr. Doren's testimony concerning the September 25, 2001 report, which details the association between her bilateral carpal tunnel syndrome being associated with her back and neck pain. PM at 15. Focusing on this connection, Plaintiff attempts to link the medical expert's testimony that bilateral carpal tunnel syndrome has always been a primary severe impairment to her functional limitations prior to October 2003. *Id.* Further, in support of her position, Plaintiff cites progress notes listing bilateral carpal tunnel syndrome and chronic ankle pain (June 29, 2001), complaints of bilateral carpal tunnel syndrome (August 3, 2001), and the medical expert's acknowledgment that Plaintiff "had a

twenty year history of numbness and tingling in the bilateral upper extremities." PM at 14-18 (citing AR at 238).

Defendant contends Plaintiff failed to carry her burden of showing the severity of Plaintiff's conditions. DM at 11. Defendant points to the absence of reports during the relevant time period which show the functional limitations associated with Plaintiff's wrist or ankle impairments. *Id*. Specifically, Defendant argues the only reports that exist for the relevant time period show Plaintiff's joint pain (ankle and wrist) to be unremarkable. *Id*.

In contrast to the evidence cited by Plaintiffs, Defendant cites documents containing objective medical evidence during the relevant time period which support its position. First, Defendant argues the April 2, 2003 report shows Plaintiff denies any "back pain, joint pain, or stiffness." *Id*. (citing AR at 172). Second, the report from June 2, 2003 reveals nothing abnormal about Plaintiff's upper and lower extremities (including her wrist and ankle). AR at 168. Third, there were no diagnostic tests revealing Plaintiff's functional limitations during the relevant time period in either her upper or lower extremities. *See* AR at 118-224. Fourth, Plaintiff's complaints of tingling and numbness, a strong indicator of the severity of Plaintiff's bilateral carpal tunnel syndrome, all occurred after September/ October 2003, with an actual objective (nerve conduction study) finding on March 23, 2004. AR at 144, 242-243. It is important to note that the ALJ's findings can take into consideration the absence of evidence in the record. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (the ALJ "is entitled to rely not only on what the record says, but also on what it does not say.") (citing *Rutherford v. Schweiker*, 685 F.2d at 63; *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir.1982) (per curiam)).

Additionally, Plaintiff's own testimony undermines her position that she was severely impaired during the period from February 2003 to October 2003. She testified that: 1) she currently drives to the library and to the grocery store, although she is limited in pushing the grocery cart; 2) she stopped swimming approximately one month before the hearing; 3) she has stopped walking/ jogging and taking her dog for a walk because of back pain; 4) she performs a little flower gardening but has had to hire workers for other gardening chores; and 5) she stopped doing household chores sometime in 2004. AR at 233-235. From Plaintiff's own descriptions, it is reasonable to conclude that her ailments have prevented her from doing normal chores and activities that range from one month to one year. If we project backward from the

hearing date and take into consideration the time frame most beneficial to the Plaintiff, going back one full year, the evidence still shows that Plaintiff's impairments only began limiting her daily activities in or around January 2004.

Looking at Plaintiff's testimony in combination with her complaints to her treating and examining physicians, one is hard pressed to find any objective evidence that Plaintiff was severely impaired prior to October 2003. Instead objective evidence refutes Plaintiff.

On March 12, 2004, progress notes indicated that the severity of Plaintiff's bilateral carpal tunnel symptoms had been ongoing for the previous six months. AR at 161. Additionally, a February 10, 2004 report indicated that Plaintiff's symptoms had been ongoing the previous two months.[18] AR at 163. These findings further substantiate the ALJ's finding of no disability prior to October 2003. AR at 19, 21.

Finally, Plaintiff believes it was legal error for the ALJ to ignore the June 29, 2001 diagnosis of right ankle pain and a report by two State consultants who found the right ankle pain was a severe impairment. PM at 18-20. The Ninth circuit is clear that an ALJ has to consider all evidence, however, he does not have to discuss every piece of evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Nonetheless, the ALJ cannot abstractly choose evidence in support of his position while ignoring evidence favorable to the Plaintiff. *Id*. Here, the ALJ focuses his discussion on the relevant time period, giving greater weight to reports that discuss plaintiff's ailments or lack thereof during this period. The reports that Plaintiff relies upon are all outside the relevant time period. For example, the report by the State consultants are from April 27, 2004. AR at 126-127. Although the consultants recognize Plaintiff's chronic right ankle pain, there is no specific mention of whether and when the pain constituted a severe impairment. *See Id*. District courts have recognized the difficulty of cases where "medical evidence on the record does not include any medical opinions produced during the relevant time period." *Keller v. Astrue*, 2008 WL 2367094, (W.D. Wash. 2008). However, the ALJ does not err when he determines such evidence to have little weight or probative value. Such a determination is not indicative of a failure to consider the relevant evidence. *Mullins v. Astrue*, 2008 WL 360793, at *10 (S.D. Ind. 2008). This court finds that the ALJ considered the record as a whole and relied on substantial evidence to support his conclusion that Plaintiff

---

[18] On February 10, 2004, Plaintiff denied any numbness and complained of pain and tingling "for approximately two months." AR at 163.

**did not** have severe impairments of the wrist or ankle **prior to** October 2003.

## CONCLUSION AND RECOMMENDATION

The ALJ presented nine reasons for rejecting Plaintiff's disabling pain testimony.  Plaintiff opposed three of the nine reasons put forth by the ALJ.  The ALJ's decision that Plaintiff could perform light work, perform past relevant work, and that Plaintiff did not have severe impairments to the wrist and ankle prior to October 2003, are each supported by substantial evidence.  After a thorough review of the record, the papers submitted and the authorities cited therein, and for the reasons set forth above, this Court recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for reversal and/or remand be **DENIED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that **no later than August 4, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than August 18, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 14, 2008

*[signature]*

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court