1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | CYNTHIA LIND,

12 |                                    Plaintiff,

13 |     vs.

14

15

16 | COMMISSIONER OF SOCIAL SECURITY,

17 |                                    Defendant.

18

CASE NO. 07CV1395-LAB (WMc)

**ORDER ADOPTING REPORT AND RECOMMENDATION;**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND**

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

19          Plaintiff filed her complaint in this action seeking review of a final decision denying

20   disability benefits for the period February 1, 2003 to October 1, 2003 (the "Relevant Time

21   Period").  She was granted disability benefits from October 1, 2003 onward.

22          This matter was referred to Magistrate Judge William McCurine for report and

23   recommendation pursuant to 28 U.S.C. § 636.  The parties filed cross-motions for summary

24   judgments and on July 14, 2008, Judge McCurine issued his report and recommendation

25   (the "R&R") recommending granting Defendant's motion and denying Plaintiff's motion.

26   **I.      Legal Standards**

27          A district judge "may accept, reject, or modify the recommended decision" on a

28   dispositive matter prepared by a magistrate judge proceeding without the consent of the

parties for all purposes.  Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).  "The court shall make a de novo determination of those portions of  the [report and recommendation] to which objection is made."  28 U.S.C. § 636(b)(1).  Section 636(b)(1) does not require some lesser review by the district court when no objections are filed.  *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  "[T]he court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1).  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise.")

Plaintiff, who is represented by counsel, filed lengthy objections ("Objections") to various portions of the R&R, and Defendant filed a reply.  Because Plaintiff's objections are not clearly organized[1] and do not always include citations showing which evidence she is referring to, a casual reading might suggest Plaintiff was making dozens of different objections.  It appears, however, many of the objections overlap, and Plaintiff is in fact objecting to only three main recommendations.  First, Plaintiff objects to the R&R's finding concerning the ALJ's decision concerning the onset of her disability caused by carpal tunnel syndrome.  Second, she objects to the R&R's recommendation of harmless error with regard to the ALJ's failure to make specific findings showing she was able to work at her former job during the Relevant Time Period.  Third, she objects to the R&R's rejection of her arguments that she should have been found disabled because of ankle pain.  There are many subsidiary objections, but they are subsumed within these three broader categories.  To the

/ / /

---

[1] The Objections are listed under three headings: "The ALJ Failed to Establish Plaintiff Could Perform the Full Range of Light Work Activity Prior to October 2003," (Obj. at 2:1–16:22), "The ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work Prior to October 2003 Is Not Based on Substantial Evidence," (*id.* at 16:23–17:3), and "The ALJ Erred in Determining Plaintiff Did Not Suffer From Severe Bilateral Carpal Tunnel Syndrome Prior to October 2003." (*Id.* at 17:4–22:22.)  These headings give little guidance as to the actual objections, however.  For example, as part of the third section, Plaintiff objects that the ALJ erred by not considering her ankle pain to be a disabling impairment.  (*id.* 20:20–21:6, 21:24–22:10.)  The actual objections are scattered throughout the different sections.

1  extent Plaintiff may have intended to make other objections, the Court holds she has not
2  done so clearly.

3  **II.    Pleading Issues**

4         The Court notes several problems with the Objections, which are not attributable to
5  Plaintiff herself and which the Court does not hold against her in reaching its decision, but
6  which Plaintiff's counsel should nevertheless take care to correct in future filings.

7         First, besides organizational problems, the Objections mistake the role of the
8  Administrative Law Judge ("ALJ") and Judge McCurine.  The ALJ and Judge McCurine are
9  adjudicative officers, not advocates or parties.  It is thus inappropriate to refer to their
10  findings or legal discussion as arguments (*see* Obj. at 17:12–14) or admissions (*id.* at
11  6:–24–7:1), to put the onus on them to establish particular facts (*id.* at 2:1–3), or to accuse
12  the Magistrate Judge of misrepresenting the evidence.  (*Id.* at 6:8–11.)  The ALJ and
13  Magistrate Judge could, of course, err, but because their findings and recommendations are
14  not advocacy, their error do not constitute misrepresentations to the Court.  The Court
15  construes this as awkward attempts to communicate the idea that their decisions were in
16  error.

17         Second, the Objections argue that the R&R erred by citing opinions not issued by the
18  Ninth Circuit.  (Obj. at 21:6–9 (arguing two district court opinions "are inapplicable as they
19  do not represent binding 9th Circuit case law in this Court").)  This is erroneous because the
20  Court may consider non-binding opinions as persuasive precedent, consistently with Ninth
21  Circuit Rule 36-3.  Even if it were an accurate statement of law, Plaintiff must do more than
22  claim adverse precedent is inapplicable; she should show why reliance on it is wrong, or
23  what the relevant standard is.  Otherwise, such a critique is unhelpful and unpersuasive.
24  Furthermore, Plaintiff's own pleadings have freely cited precedents from other circuits.  (*See,*
25  *e.g.*, Pl.'s Mot. for Summ. J. at ii–iii (table of cases listing precedents from the 7th, 10th, and
26  D.C. Circuits).)

27         Third, and perhaps most seriously, the Objections suffer from some misleading
28  citation to the evidence and editing of quotations.  To cite examples, the Objections state

"The Magistrate cited Plaintiff's progress notes on August 3, 2001 also confirmed the severity of Plaintiff's bilateral tunnel syndrome." (Obj. at 7:12–15 (citing R&R at 9:19–21.).) This phrasing sounds as if the R&R agreed the progress notes confirmed the severity of Plaintiff's symptoms.  In fact, the R&R says "Plaintiff cites progress notes from August 3, 2001 as confirmation of the severity of Plaintiff's bilateral carpal tunnel symptoms." Furthermore, as discussed below, the progress notes are cursory and do not clearly show the existence of CTS or the severity of Plaintiff's hand or wrist pain.

Additionally, when arguing that Plaintiff's ankle pain constituted a severe impairment, the Objections report a medical consultant as having stated "Based on the record, we can stipulate to severe MDI [medical determinable impairment], but I would agree that claimant should be capable of a [less than full] (sic) LIGHT pRFC . . . ." (Obj. at 20:20–21:3.)  The same passage argues the medical consultant "considered Medical Listing 1.02 specifically referred to a 'major dysfunction of a weight-bearing joint/lower extremity eg. Ankle." ((*Id.* at 21:3–6 (citing AR at 127).)  This creates the impression that the medical consultant's recommendation agreed to stipulate that Plaintiff's ankle pain constituted a severe impairment.  While it is true the medical consultant's report considered the 1.02 listing, the recommendation omits it.  The partially-quoted sentence actually refers to Plaintiff's carpal tunnel syndrome and suggests restrictions on use of her hands, not her ankle.  The remainder of the recommendation rejects limitations because of back problems. Use of the ellipsis to suggest the medical consultant was referring to ankle problems was thus misleading.

In view of the state of the Objections' organization this could well be accidental, but the fact that the editing appears to favor Plaintiff creates the appearance that the inaccuracies are intended to bolster Plaintiff's arguments.  Plaintiff's counsel is admonished to be accurate in citing to the record, pleadings, and authority.

/ / /

/ / /

/ / /

**III.    Discussion**

Much of the relevant factual and legal discussion is provided in portions of the R&R to which Plaintiff has not objected and which the Court therefore adopts.  The Court need not repeat the R&R's discussion in full here.

**A.    Carpal Tunnel Syndrome**

Plaintiff's medical records show she was injured in 1978 when she struggled with her former husband and he grabbed her hand.  She has reported numbness and tingling since that time.[2]  It is not clear whether the numbness and tingling was constant, or if it was actually carpal tunnel syndrome ("CTS"), but it was not disabling, because she was gainfully employed until 1999.

In various portions of the Objections, Plaintiff argues about the meaning of certain testimony by the medical expert, Dr. Doran.  Essentially, she argues he testified she suffered from disabling symptoms of carpal tunnel syndrome indefinitely into the past, but the ALJ erroneously construed Dr. Doran's testimony as referring only to disability after October, 2003.  (*See, e.g.*, Obj. at 3:8–11, 4:6–10, 17:23–18:7, 21:13–24.)

The ALJ, citing evidence, found Plaintiff's first complaint of disabling symptoms of CTS was made February 4, 2004, when she reported renewed numbness and tingling beginning three or four months previously.  (AR at 17.)  This appears to be an error, but a harmless one, because the report this appears to have been based on was dated February 10, 2004 and gave the time of onset as <u>two</u> months previously.  (*Id.* at 163.)  At that time, Plaintiff reported some weakness but no numbness.  (*Id.*)  Two other reports were made in March of 2004, reporting numbness and tingling beginning about six months previously.  (AR at 244–45 (citing AR at 156, 160).)  All three reports state Plaintiff reported the tingling was brought on by activities such as brushing her hair, cooking, or driving.  He also found, citing evidence, that during the Relevant Time Period she could do ordinary tasks necessary to

---

[2] Citing no portion of the AR, Plaintiff says she was under "treatment" for numbness and tingling for 20 years (Obj. at 10:23–26), but in fact the treatment appears to have consisted of X-rays and several attempts at diagnosis based on her own reports to doctors. (AR at 154 (report of Dr. Pacelli).)  Dr. Doran testified she was under treatment for musculoskeletal problems for 20 years.  (AR at 238.)

1   care for herself, such as gardening, shopping, housework, and driving.[3] (*Id.* at 19.) This was

2   the subject of Dr. Doran's testimony. (*Id.* at 240.)

3       The ALJ, citing evidence, found Plaintiff was disabled as a result of bilateral CTS

4   beginning October 1, 2003. (AR at 18.) It is reasonable to date the onset of disability at

5   least this far back because Plaintiff's complaints of disabling tingling and numbness that

6   eventually led to the diagnosis of CTS date back no more than six months before March,

7   2004. Plaintiff's arguments notwithstanding, the cited evidence supports the ALJ's decision.

8   Although Plaintiff had reported numbness, tingling, or pain after being injured in 1978 and

9   these complaints are memorialized in medical reports, these symptoms are not by

10  themselves a disability, *see* 42 U.S.C. § 423(d)(1)(A) (requiring a claimant to demonstrate

11  inability to engage in substantial gainful activity), nor are they the same as CTS.

12  Furthermore, the ALJ took note of Plaintiff's evidence but on the basis of cited evidence

13  found it did not support a finding of disability during the Relevant Time Period. (AR at 18–19,

14  21.) As the ALJ noted, no physician ever opined Plaintiff was disabled during the Relevant

15  Time Period. (*Id.* at 19.)

16      Plaintiff's reading of Dr. Doran's testimony as stating she was disabled during the

17  Relevant Time period is not reasonable. Dr. Doran referred to records well after the

18  Relevant Time Period to support his assessment. (AR at 238–242; *see especially id.* at 240

19  (identifying medical records showing Plaintiff's disabling symptoms of CTS began at the end

20  of the Relevant Time Period).) Dr. Doran mentioned medical reports from 2001 (*id.* at

21  246–47), but these mentioned no tingling, pain, or numbness. (AR at 185–86.) There is no

22  indication Dr. Doran was testifying about Plaintiff's limitations before October 1, 2003.

23  Based on the ALJ's citation of evidence, it appears he relied on medical records showing the

24

25      [3] Plaintiff quibbles with the ALJ's finding that she could do housework during the
    Relevant Time Period. (Obj. at 18:24–19:3 (citing AR at 235).) Plaintiff's testimony does not

26  show she could not do housework during the Relevant Time Period, but rather that she hired
    someone to do her housework some time in 2004 and before that, her son and his fiancee

27  did it until they moved out of state. (AR at 235.) She did not say when her son and his
    fiancee began doing housework. The ALJ's interpretation of her testimony is reasonable in

28  light of her previous testimony that her husband hired people to do work she could no longer
    do (*id.* at 234–235), the question her testimony was responding to ("When did you stop
    [doing housework]?"), and Plaintiff's own reports of her other activities during and even after
    the Relevant Time Period.

1   absence of CTS-related disability, and testimony regarding the onset of disabling symptoms

2   to find Plaintiff was not disabled due to CTS during the Relevant Time Period.  Most of

3   Plaintiff's arguments thus rely on an unreasonable blurring of the timeline.  Reference to the

4   entire transcript and to the records Dr. Doran cited, however, sufficiently shows the ALJ

5   correctly interpreted the evidence.

6         Plaintiff points to a few portions of the record during and before the Relevant Time

7   Period that she believes support her claim.  She points out the ALJ mentioned a progress

8   note from March 12, 2003 indicated Tinel's sign was positive on her left wrist only (AR at 17)

9   and from this argues there was evidence she was disabled at that time.  (Obj. at 12:9–12.)

10  The year cited appears to be a typographical error, however, because the examination took

11  place on March 12, 2004, not 2003.[4]  (AR at 160.)  This error is harmless, both because it

12  favors Plaintiff and because the ALJ's decision was unaffected by it.  Plaintiff argues

13  progress notes dated June 29, 2001 showed she was suffering pain in her hands.  (Obj. at

14  7:8–11; *see also* AR at 191–92 (medical report).)  This report, however, reports Plaintiff was

15  previously told she did not have CTS (AR at 191), and the treating physician suspected

16  arthritis or bony spurs, not CTS.  (*Id.* at 192.)  Plaintiff also contends a medical report of

17  August 3, 2001 confirmed she was suffering from bilateral CTS.  (Obj. at 7:2–15, 9:1–6.)

18  This is not accurate.  While an ambiguous note mentions "L - CTA Bilat.," neither the

19  complaints nor any other section clearly mention anything about CTS or wrist or hand pain.

20  (AR at 189).  Plaintiff cites no evidence to show that "L - CTA" refers to a diagnosis of CTS

21  or disability.  The pain assessment of 7 out of 10 (Obj. at 7:8–12; *see also* AR at 190) does

22  not refer to any particular symptom, though the most reasonable interpretation appears to

23  be that it refers to the chronic neck and back pain she complained of on that day, rather than

24  the wrist pains he had complained of just over a month previously.  (*Id.* at 189 (reporting

25  neck and back pain on August 3), 191 (reporting wrist pain on June 29).)

26  / / /

27

---

28       [4] A record of Plaintiff's physical on April 2, 2003 reports no joint pain or stiffness (AR at 172) and notes no problems with Plaintiff's extremities (other than heel fissures) or musculoskeletal system. (*Id.* at 173.)

The ALJ did consider Plaintiff's evidence, but found it did not adequately support her position.  The ALJ correctly noted an absence of objective evidence in the record showing Plaintiff suffered from CTS or was disabled during or before the Relevant Time Period, and went on to find Plaintiff's allegations of pain, symptoms, and limitations for this period were "in excess of the objective medical findings."  (AR at 18.)  The ALJ went on to cite specific evidence showing why he found her allegations of disability during the Relevant Time Period were not credible.  (*Id.* at 18–19.)

Because the ALJ's findings were based on substantial evidence and the ALJ did not neglect to consider Plaintiff's evidence, and for other reasons discussed in the R&R, this group of objections is **OVERRULED**.

### B.    Functional Analysis

This group of objections deals with step 4 of the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920.  Step 2 evaluates the severity of impairments, while step 4 determines whether impairments prevent the claimant from performing past relevant work.  If the claimant is able to perform past relevant work, she is not disabled.

Plaintiff argues the only evidence showed she was incapable of lifting 10 pounds frequently and thus could not perform light work during the Relevant Time Period.  (Obj. at 2:8–3:4, 6:1–11; Pl.'s MSJ at 8:15–18.)  She claims the ALJ's determination of her residual functioning capacity ("RFC") did not include accurate information from the testimony of a medical expert.  (Pl.'s MSJ  at 8:15–18 (citing 20 C.F.R. § 404.1567(b)).)  She also argues Social Security Ruling 96-8p required the ALJ to formulate his decision so as to include a function-by-function analysis, rather than expressing his determination as an exertional category ("light," "sedentary," etc.)  (Obj. at 13:4–16:7; Pl.'s MSJ at 9:5–11.)  She also argues the ALJ's decision she could perform past relevant work was not based on substantial evidence.  (Obj. at 16:23–17:3.)

The R&R agreed the ALJ erred when he based his decision on Plaintiff's ability to work at several of her past jobs, but concluded because she could work at one of them — customer service clerk — the error was harmless.  (R&R at 13:20–17:4.)  The Court agrees

1  it was harmless, because Step 4 analysis examines whether an impairment prevents a
2  claimant from performing past relevant work.   20 C.F.R. §§ 404.1520 (e), 416.920 (e).
3  Plaintiff's 14-year job as a customer service representative, by itself, would satisfy this.
4  Thus, although the ALJ mentioned other jobs that did not qualify as "past relevant work," a
5  finding that she could work as a customer service representative would be sufficient.  Plaintiff
6  objected extensively (Obj. at 10:27–14:13) to portions of the R&R that agree with her
7  position, but these objections are moot.

8      Plaintiff argues the ALJ failed to make proper findings supporting his conclusion she
9  could work at her former job as a customer service representative.  Plaintiff worked at this
10  job for over 14 years, from June of 1985 until October of 1999.  (AR at 66.)  The only fact
11  at issue is whether the ALJ correctly found Plaintiff's limitations did not prevent her from
12  working as a customer service representative.  (*See* AR at 16, 19, 21.)

13      Plaintiff contends the ALJ merely expressed her limitations as an exertional category,
14  rather than conducting a function by function analysis, which she says is required.  (Pl.'s
15  MSJ at 9:5–11 (citing SSR 96-8p); Obj. at 13:4–14:4.)   An explicit function-by-function
16  assessment is not required.  *See Shaw v. Comm'r of Social Sec. Admin.*, 2008 WL 1734761,
17  slip op. at *5 (N.D.Cal., April 14, 2008) (citing cases).  Here, the Dr. Doran testified that the
18  function-by-function assessment conducted by Dr. Brodsky, noting Plaintiff's medical history,
19  represented a composite of all the evidence.  (AR at 242 (citing AR at 118–127 (RFC
20  assessment)).) This assessment concluded only manual manipulation limitations and no
21  others were appropriate and stipulated that Plaintiff could lift 20 pounds occasionally and 10
22  pounds frequently.  (*Id.* at 119, 127.)  The ALJ considered the evidence in the record and
23  agreed with Dr. Doran and Dr. Brodsky on this point, finding that during the Relevant Time
24  Period, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently.  (AR at 18.)
25  Plaintiff's argument that there is no way to know what the ALJ thought her limitations were.
26  This argument fails because, as noted, the only limitations in the evidence pertained to
27  manual manipulation, which corresponds with the ALJ's findings.  (*Id.*)
28  / / /

The ALJ therefore properly found Plaintiff could do light work during the Relevant Time Period. (*Id.*; *see also* 20 C.F.R. § 404.1567(c).) Dr. Doran's testimony regarding Dr. Pacelli's RFC assessment supported the ALJ's finding of more restrictive limitations <u>after</u> the Relevant Time Period. (AR at 243, 18, 197–206; *see* R&R at 10:15–11:8 and n.10.)

Because the ALJ relied on function-by-function RFC assessments by doctors and on appropriate evidence, and these support his finding Plaintiff could perform light work during the Relevant Time Period, the ALJ was not required to repeat the function-by-function analysis.

The ALJ questioned the vocational expert about Plaintiff's ability to do light work, including her work as a customer service representative. (AR 248–49.) The ALJ laid out Plaintiff's limitations during the Relevant Time Period, and the vocational expert agreed Plaintiff could perform this work. (*Id.* at AR 249.) The ALJ relied on this to find Plaintiff could perform her past work as a customer service representative. (*Id.* at 19.) For reasons explained in the R&R at 15 n.17, the ALJ's failure to inquire about possible conflicts with the *Dictionary of Occupational Titles* does not require remand. *See also Massachi v. Astrue*, 486 F.3d 1149, 1153–54 and n.19 (procedural error in failing to ask vocational expert whether her testimony conflicted with the *Dictionary of Occupational Titles* and, if so, whether there was a reasonable explanation for the conflict would be harmless where the vocational expert provided sufficient support for her conclusion so as to justify any potential conflicts). The Court also notes Plaintiff herself stated her work as a customer service representative never involved lifting more than 10 pounds. (AR at 67.)

For these reasons, as well as reasons explained more fully in the R&R, the Court therefore **OVERRULES** this group of objections.

### C.   Ankle Pain

Plaintiff objects that she was impaired by ankle pain during the Relevant Time Period, and she faults the ALJ for failing to address this properly. (Obj. at 20:20–21:6, 21:24–22:10.) The ALJ, however, did note that she was alleging ankle pain as well as several other symptoms (AR at 16), but found on the basis of cited evidence none of her ailments or

symptoms were disabling during the Relevant Time Period. (*Id.* at 17–19.) It is clear he was considering the various impairments Plaintiff alleged, and not merely CTS. (*Id.* at 19 ("[D]uring the relevant period, the objective evidence of record does not reflect the existence of an impairment or combination of impairments which would have produced the crippling symptoms and limitations alleged by the claimant.").))

Furthermore, the evidence Plaintiff cites does not support her position. As discussed in section II *supra*, Plaintiff has mischaracterized Dr. Brodsky's RFC as stating her ankle pain was a limitation. In fact, Dr. Brodsky concluded Plaintiff had a sensation of ankle pain or instability, but her ankle was not in fact unstable. (AR at 127.) He considered but rejected the possibility that the condition of her ankle was disabling, and concluded her only limitations were manual. (*Id.*) The ALJ, relying on Dr. Doran's characterization of Dr. Brodsky's RFC, found Plaintiff was unrestricted during the Relevant Time Period except with regard to the amount of weight she could lift. (*Id.* at 18 (citing Exhibits 2F and 3F).)

This group of objections is therefore **OVERRULED**.

**IV.    Conclusion and Order**

For these reasons, Plaintiff's objections to the R&R are **OVERRULED**. The Court **ADOPTS** the R&R with the additional explanation included in this order. Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**. The relief Plaintiff has requested in her Complaint is **DENIED** and Plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED.**

DATED:  September 24, 2008

**Honorable Larry Alan Burns**
United States District Judge